```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

AMANDA ZABIC,

        Plaintiff,

v.                            Case No. 8:15-cv-2214-T-33EAJ

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, and CELLULAR SALES OF
KNOXVILLE, INC.,

        Defendants.
_____/

**ORDER**

This cause comes before the Court sua sponte. The Court remands this action pursuant to 28 U.S.C. § 1447(c), after finding that it lacks subject matter jurisdiction.

**I.    Background**

In September of 2012, Amanda Zabic, who was 18 at the time, sought to upgrade her cellular telephone at a Verizon store in Bartow, Florida. (Doc. # 13 at ¶ 15). Zabic indicates that a Verizon employee, Joshua Stuart, "provided Ms. Zabic with a new phone and assisted her in transferring data which had been electronically stored in Ms. Zabic's old cellular phone," to a new cellular phone. (Id. at ¶ 17). The electronically stored data included "photographs of Ms. Zabic in an undressed, or semi-dressed state." (Id. at ¶ 18). According to Zabic, Verizon "promised and repeatedly assured that all data would be transferred from her old

phone to the new unit without the necessity of displaying any of the photographs and without the photographs or other personal information being seen or viewed by Verizon employees or anyone else." (Id. at 19). Despite these assurances, Zabic contends that Verizon employees, including Stuart and another employee (Gregory Lambert) viewed the nude photographs of her, saved the photographs to their personal cellular phones, and then shared those images with others. Specifically, Zabic alleges that when one of her acquaintances, Joshua Wingate, came to the same Bartow, Florida Verizon store, Verizon employees showed Wingate "photographs of a nude, semi-nude and partially clothed Amanda Zabic." (Id. at ¶ 28).

Wingate advised Zabic that Verizon employees were displaying her nude photos and, accordingly, Zabic contacted law enforcement. (Id. at ¶¶ 30, 33). According to the Complaint, Stuart and Lambert "were charged and convicted of Offenses against Computer Uses, Prohibition of Lewd Acts and Theft." (Id. at ¶ 34).

On August 26, 2015, Zabic filed a Complaint against Verizon Wireless Services, LLC and Cellular Sales of Knoxville, Inc. in the Circuit Court of the Thirteenth

Judicial Circuit for Hillsborough County, Florida, bringing the following counts: negligence, invasion of privacy, public disclosure of private facts, theft and conversion, civil remedies for criminal practices, intentional infliction of emotional distress, respondeat superior, and vicarious liability. (Doc. # 2).

On September 23, 2015, Defendants removed this action on the basis of the Court's diversity jurisdiction. (Doc. # 1). Thereafter, on October 2, 2015, Zabic filed an Amended Complaint naming Cellco Partnership d/b/a Verizon Wireless and Cellular Sales of Knoxville, Inc. as the Defendants. (Doc. # 13). Defendants have provided detailed information about their citizenship, such that the Court is satisfied that the parties are completely diverse. However, as explained below, Defendants, as the removing parties, have not demonstrated that the amount in controversy exceeds the jurisdictional threshold of $75,000.00. The matter is accordingly remanded to state court.

## II. **Legal Standard**

Under 28 U.S.C. § 1441, a defendant can remove an action to a United States District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a).

United States District Courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Removal is proper if the complaint makes it "facially apparent" that the amount in controversy exceeds $75,000. Williams v. Best Buy, Co., 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Id.

In this case, it is undisputed that the parties are of diverse citizenship. The only question is whether the amount in controversy exceeds the $75,000 jurisdictional threshold. In both the initial Complaint and the Amended Complaint, Zabic has not specified the precise amount of relief sought in the lawsuit, instead alleging damages "in excess of $15,000." (Doc. # 2 at ¶ 1; Doc. # 13 at ¶ 1). Where, as here, "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). "[R]emoval statutes

are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) (emphasis added).

## III. Analysis

As previously stated, the Complaint alleges damages in excess of $15,000. Without any further specificity on damages, Defendants, as the removing parties, bear the burden of proving, by a preponderance of the evidence, that the amount in controversy is in excess of $75,000. See Lowery, 483 F.3d at 1208.

In the Notice of Removal, Defendants indicate: "Plaintiff's counsel has demanded $150,000 to settle the case" and "[t]herefore, the amount in controversy exceeds $75,000.00, exclusive or interest and costs, as required for diversity jurisdiction in Federal Court." (Doc. # 1 at 4). No further information regarding the amount in controversy is provided in the Notice of Removal.

The Court has evaluated the demand letter mentioned in the Notice of Removal; however, a number of federal courts, including the present Court, have held that settlement offers do not automatically establish the amount in

5

controversy for purposes of diversity jurisdiction. Lamb v. State Farm Fire Mut. Auto. Ins. Co., No. 3:10-CV-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010); Piazza v. Ambassador II JV, L.P., No. 8:10-CV-1582-T-23EAJ, 2010 WL 2889218, at *1 (M.D. Fla. July 21, 2010)("A settlement offer is relevant but not determinative of the amount in controversy.").

Instead, courts have analyzed whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." Lamb, 2010 WL 6790539, at *2 (quoting Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)); Piazza, 2010 WL 2889218, at *1 ("a settlement demand provides only marginal evidence of the amount in controversy because the 'plaintiff's letter is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages' sought by the plaintiff.").

Upon review, this Court finds that Zabic's demand reflects mere posturing rather than a reasonable assessment

6

of the value of her claim. The demand letter is factually detailed, but contains no analysis of why her claim is worth $150,000.00, or any other amount. Zabic's counsel correctly indicates in the demand letter: "This is not a claim in which the loss and damages suffered by Ms. Zabic can be quantified with any degree of precision." (Doc. # 1-1 at 25). Rather than trying to zero-in on the amount of the loss, Zabic's counsel discusses only one other case, as follows:

> With respect to damages and what constitutes a reasonable amount, I commend your attention to the reported case styled In re Thomas, 254 B.R. 879 (S.C. Dist. Bkrtcy Ct. 1999), a case arising in the context of a bankruptcy proceeding in which the debtor's finance [sic] – both private, non-celebrity citizens – was awarded $300,000 in compensatory damages, together with an additional $125,000 in punitive damages for the mailing of private, sexually explicit photographs of a girlfriend and the threat of publication.

The facts in the Thomas case were egregious and bear little resemblance to those presented here. To summarize, Ms. Hardy had a sexual relationship with Mr. Thomas and allowed Mr. Thomas to take photographs during various sexual acts. Thomas, 254 B.R. at 882. Ms. Hardy ended the relationship with Mr. Thomas and began a new romantic

7

relationship with Mr. Prezioso, which led to an engagement to be married. Id. at 882-83. Thereafter, Mr. Thomas mailed a copy of some of the sexually explicit photographs of Ms. Hardy to Mr. Prezioso and demanded money from Mr. Prezioso as well as the opportunity to have sex with Ms. Hardy once again. Id. Unless these conditions were met, Mr. Thomas threatened to send the sexually explicit photos to Ms. Hardy's employer. Id.  Mr. Thomas was found guilty of criminal extortion and, in a trial brought by Mr. Prezioso, the court awarded $300,000 for intentional infliction of emotional distress as well as punitive damages. Id. at 886.[1] While the present case also involves provocative photographs, there are no other similarities.

Zabic's January 15, 2015, demand letter - as attached to the Notice of Removal - fails to explain how Zabic arrived at the $150,000.00 figure and does not provide a discussion of the economic or non-economic damages she may be seeking with any particularity. See Johnson v. Liberty Mut. Ins. Co., No. 8:13-cv-491, 2013 WL 1503109, at *4 (M.D. Fla. Apr. 12, 2013) (finding that the pre-suit demand letter

---

[1] The Thomas case also discussed the unique issue of whether an injured person can recover punitive damages against a deceased tortfeasor's estate, as Mr. Thomas died during the course of the proceedings. Id. at 887.

was a general demand as it contained no specific information as to the amount of damages sustained by plaintiff); Standridge v. Wal-Mart Stores, 945 F. Supp. 252, 256 (N.D. Ga. 1996)(holding that a pre-suit demand letter was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking."). That Zabic offered to settle her case for more than $75,000.00 does not establish by a preponderance of the evidence that the amount in controversy requirement is met. See Daniel v. Nationpoint, No. 2:07-cv-640, 2007 U.S. Dist. LEXIS 93367, at *5 (M.D. Ala. Dec. 19, 2007).

In addition, that the demand letter was presented months in advance of the initiation of this suit further erodes its value for the purposes of determining the amount in controversy. A number of courts have indicated that pre-suit demand letters (as opposed to offers to settle after the filing of the complaint), are often worthy of very little consideration. See, e.g., Elder v. TFAL, Inc., 2007 U.S. Dist. LEXIS 82123, at *8 (N.D. Ga. Oct. 31, 2007) (in the context of determining amount in controversy, giving "little weight" to a demand letter submitted prior to the

9

filing of the complaint); Saberton v. Sears Roebuck & Co., 392 F. Supp. 2d 1358, 1360 (M.D. Fla. 2005)("Although case law permits the use of post-suit demand letters in determining the amount in controversy requirement, [a] pre-suit demand letter will not be considered.").

Given that "uncertainties are resolved in favor of remand," Burns, 31 F.3d at 1095, the Court finds that Defendants have failed to prove that the amount in controversy exceeds $75,000. Consequently, the Court determines that it lacks subject matter jurisdiction, and this case must be remanded to state court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) This case is remanded to state court pursuant to 28 U.S.C. § 1447(c), because this Court lacks subject matter jurisdiction.

(2) After remand has been effected, the Clerk shall **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>9th</u> day of October, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record